**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| HELEN KERCH<br>As personal representative of the estate of ROY RUSSO<br>5612 Newington Road<br>Bethesda, Maryland  20816<br><br>and<br><br>JOHN RUSSO<br>5612 Newington Road<br>Bethesda, Maryland  20816<br><br>     Plaintiffs<br><br>v.<br><br>STEPHANIE RUSSO KOWALSKI<br>6528 Bowie Drive<br>Springfield, Virginia 22150<br><br>     Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No:  1:18cv213 (LO/TCB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

COMES NOW, Helen Kerch and John Russo, by and through their attorneys, John T. Riely, and Thomas H. Tousley, and sues the defendant and states as follows:

**PARTIES**

1.  Helen Kerch is an adult resident of Bethesda, Maryland.

2.  John Russo is an adult resident of Bethesda, Maryland.

3.  Stephanie Kowalski is an adult resident of Springfield, Virginia.

4.  Helen Kerch has been appointed as personal representative of the estate of Roy Russo, deceased.  The estate is being probated in Fairfax County Circuit Court, Virginia.

1

## JURISDICTION

5. The amount in controversy exceeds $75,000.00.

6. The parties hereto are residents of different states.

7. Based upon the amount in controversy and the diversity of residents of the parties, the court has diversity jurisdiction to hear this controversy pursuant to 28 USC § 1331.

## VENUE

8. Venue is proper in this instance as the defendant is found in this district and the estate is being probated in this district.

## FACTS

9. Roy Russo was a prominent Washington, DC lawyer who worked for the firm of Cohn & Marks for nearly his entire 40 year legal career. Mr. Russo was a communications lawyer.

10. Due to dramatically failing health, Mr. Russo was forced to retire from Cohn and Marks on or about December 31, 2014.

11. During the decedent's time and employment at Chen and Marks, Mr. Russo participated in the firm's retirement plant (IRA).

12. On February 19, 2015, the decedent's IRA was rolled over from the firm of Cohn and Marks to the Washington, DC investment house of Folger, Nolan, Fleming & Douglas located at 725 15th St., NW, Washington, DC.

13. Commencing on or about December 17, 2014, the decedent, Roy Russo's health deteriorated precipitously. During December 2014 the decedent Roy Russo was hospitalized at INOVA, Alexandria with Sepsis and shortly thereafter went into a coma. Near death, Mr. Russo lacked the mental capacity and understanding to

2

engage in important business or financial decisions or to make decisions to care for his health.  His home situation was deemed unsafe and he was discharged to Leewood Health Care Center in January 2015.  The Fairfax County Adult Protective Services determined Mr. Russo's situation with the defendant was contraindicated with regard to his health to be returned to his home in Springfield, Virginia.

14. On February 19, 2015, the law firm of Cohn and Marks caused the decedent's IRA in the amount of $811,000.00 to be rolled over from the firm to the aforementioned brokerage firm at Folger, Nolan, Fleming & Douglas located at 725 15th St., NW, Washington, DC 20005.

15. Marc Lippman was the broker at Folger, Nolan, Fleming & Douglas in charge of the account.  At all times herein Marc Lippman was acting as a disclosed agent of Folger, Nolan, Fleming & Douglas.

16. On the very same day that this IRA was rolled over and transferred to Folger, Nolan, Fleming & Douglas, Marc Lippman caused to be transferred $50,000.00 of the IRA funds to the account of Stephanie Kowalski.

17. Both Marc Lippman and Stephanie Kowalski knew or should have known that Roy Russo was not capable of making important business or financial decisions or to make decisions to care for his health.  At all times relevant to this complaint, the decedent Roy Russo lacked the physical and mental capacity to conduct important financial and legal matters.

18. On or about February 28, 2105, Roy Russo fell and broke his hip.

19. On or about March 4, 2015, Roy Russo was permanently placed in a nursing home, the Golden Living, in Virginia.

20. At or about this same time, Roy Russo was placed in this nursing home, Marc Lippman of Folger, Nolan, Fleming & Douglas began sending large sums of money to the account for the benefit of Stephanie Kowalski.

21. At all times herein relevant to the financial transactions, the decedent was not competent nor was he capable of making important legal and financial decisions. Despite this lack of competency and capacity, the defendant regularly and consistently caused large sums totaling cumulatively sums in excess of $700,000.00 to be diverted from Mr. Russo's IRA account at Folger, Nolan, Fleming & Douglass to her own account and control. These funds were sent with the complicity of Marc Lippman of Folger, Nolan, Flemming & Douglass. Both the defendant and Marc Lippman of Folger, Nolan, Flemming & Douglass knew or should have known that the decedent Mr. Russo lacked the mental and physical capacity to make important financial and legal decisions yet regularly and consistently caused large sums of monies to be transferred to the defendant from the decedent, Mr. Russo's account, and effectively depleting this account.

22. During this timeframe, both Marc Lippman and Stephanie Kowalski knew or should have known that Roy Russo was not capable of making important business or financial decisions or to make decisions to care for his health.

23. On or about February 24, 2017, Marc Lippman of Folger, Nolan, Fleming & Douglas caused another $80,000.00 to be transferred from the IRA to the benefit of Stephanie Kowalski. At the time of tis transfer, Roy Russo was in an irreversible coma.

24. Mr. Russo died on February 25, 2017.

25. Mr. Lippman caused this final $80,000.00 to be transferred to Stephanie Kowalski post mortem.

26. Mr. Russo died intestate.

27. Mr. Russo named John Russo, his grandson, and your plaintiff herein, Stephanie Kowalski, the defendant herein, Susan Russo Kowalski, his daughter, Stephen Kowalski, his grandson, and Carmella Morerro, his granddaughter, as the beneficiaries of the IRA.

28. Plaintiff, Helen Kerch, in her duties as the administrator of the estate is charged with the responsibility of collecting the assets of the estate and distributing them in accordance with the intestacy laws of the Commonwealth of Virginia.

29. Upon discharging these duties, the plaintiff and personal representative has found that the estate has virtually no assets save for two parcels of real property in the Commonwealth of Virginia with improvements.

30. Upon discharging these duties the plaintiff and personal representative found that nearly the entirety of the estate save for the real estate was depleted by the IRA transfers to Defendant, Stephanie Kowalski, and all done during a time in which Mr. Russo lacked the capacity and competence to make such decisions.

31. The defendant, Stephanie Kowalski, further and after the death of her grandfather, the decedent, Mr. Russo, opened a line of credit account with SunTrust Bank in the amount of $5,000.00.  The defendant thereafter forged Mr. Russo's signature in writing checks to herself.

32. The defendant further forged her grandfather's signature in the amount of at least $58,000.00 against a Morgan Stanley account held by the decedent and at all times

relevant herein did so when the decedent, Mr. Russo, was incapacitated and incompetent to take make important financial and legal decisions.

33. Upon information and belief, this action is now the subject of a law enforcement action and criminal prosecution in Fairfax County, Virginia.

34. Plaintiff John Russo was a named beneficiary of the Decedent's IRA and has been damaged in an amount exceeding $75,000.00 as a result of the actions of the defendant.

## CAUSES OF ACTION

## CONVERSION AND MISAPPROPRIATION

35. The plaintiffs incorporate each and every allegation in paragraphs 1-34 as if fully set forth herein.

36. The actions of the defendant, Stephanie Kowalski, did constitute conversion and misappropriation of the assets of the estate of Roy Russo in that the defendant intentionally and with forethought did engage in a course of conduct wherein she caused at least $711,000.00 to be transferred from Mr. Russo to her own account.

37. These actions were done with the intent to deprive others of the assets of the estate and to inure to her personal benefit.

## FRAUD

38. The plaintiffs incorporate each and every allegation in paragraphs 1-37 as if fully set forth herein.

39. The actions of the defendant were done and designed by the defendant, Stephanie Kowalski, with the intent to deceive and defraud the estate of Roy Russo and was done to Mr. Russo during a period of time in which Mr. Russo was acutely

vulnerable to the actions of others and was in no way capable or competent to make

decisions of his own.  Knowingly, this Stephanie Kowalski intentionally acted to

commit fraud upon the estate of Roy Russo.

**WHEREFORE**, the plaintiffs seek damages in the amount of $1,000,000.00 in

compensatory damages and $5,000,000.00 in punitive damages and for whatever further relief

this court deems just.

Respectfully submitted,

*By*      :_____/s/_____

JOHN T. RIELY
15752 Crabbs Branch Way
Rockville, Maryland  20855
301-548-1022
Pro Hac Vice[1]

:_____**/s/**_____

THOMAS H. TOUSLEY
VSB 34549
600 Cameron Street
Alexandria, Virginia 22314
Telephone:  (703) 340-1613
Email:  tom@ttousleylaw.com
ATTORNEYS FOR THE PLAINTIFF

Date:   February 26, 2018

---

[1] Pro hac vice Motion to be forthcoming.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2018, a copy of the foregoing Complaint will be sent by U.S. certified mail to:

Stephanie Russo Kowalski
6528 Bowie Drive
Springfield, Virginia 22150

By:    _____/s/_____
       THOMAS H. TOUSLEY
       VSB 34549
       600 Cameron Street
       Alexandria, Virginia 22314
       Telephone:  (703) 340-1613
       Email:  tom@ttousleylaw.com
       ATTORNEY FOR THE PLAINTIFF